## APPEAL NO. 17-4126

———————————————————————

## IN THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

———————————————————————

## XLEAR, INC.,

Plaintiff/Appellant,

v.

## FOCUS NUTRITION, LLC,

Defendant/Appellee.

———————————————————————

Appeal from the United States District Court for the District of Utah, Central Division, No. 2:16-CV-00643-DB, Honorable Dee Benson

———————————————————————

## BRIEF OF APPELLEE FOCUS NUTRITION, LLC

ORAL ARGUMENT NOT REQUESTED

———————————————————————

Matthew A. Steward
Shannon K. Zollinger
**CLYDE SNOW & SESSIONS, P.C.**
201 S. Main Street, 13th Floor
Salt Lake City, UT 84111
Telephone: (801) 322-2516

*Attorneys for Appellee Focus Nutrition, LLC*

## TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATEMENT**.......................................................1

**STATEMENT OF PRIOR OR RELATED APPEALS** .......................................1

**STATEMENT OF JURISDICTION**.....................................................................1

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW** ......................1

**STATEMENT OF THE CASE**..............................................................................2

    **I.**   **Statement of Relevant Underlying Facts and Procedural History** ...........2

    **II.**  **Order Presented for Review** .......................................................................10

**SUMMARY OF ARGUMENT** ............................................................................12

**ARGUMENT** ........................................................................................................14

    **I.**      **STANDARD OF REVIEW**.........................................................................14

    **II.**    **THE DISTRICT COURT PROPERLY FOUND THAT FOCUS NUTRITION WAS THE PREVAILING PARTY PURSUANT TO 15 U.S.C. § 1117** ........................................................................................15

        **A.** *Buckhannon* **and Its Progeny Do Not Preclude the District Court From Exercising Its Statutory Authority to Award Fees Where a Case is Voluntarily Dismissed Under Fed. R. Civ. P. 41(a)(1)** .......................15

        **B.** **The District Court's Determination of Focus Nutrition as the Prevailing Party, Supported by the Record, Satisfies** *Buckhannon* .....20

    **III.**   **THE DISTRICT COURT PROPERLY FOUND THAT THIS WAS AN "EXCEPTIONAL" CASE PURSUANT TO 15 U.S.C. §1117** .......................................................................................................24

    **IV.**   **THE DISTRICT COURT PROPERLY FOUND THAT FOCUS NUTRITION WAS THE PREVAILING PARTY PURSUANT TO UTAH CODE ANN. § 13-11a-4(2)(c)** .....................................................29

    **V.**    **THE SUPREME COURT'S RULING IN** *MICROSOFT* **DOES NOT APPLY HERE AND DID NOT HOLD THAT A VOLUNTARY DISMISSAL WITH PREJUDICE IS NOT A FINAL JUDGMENT FOR PURPOSES OF SEEKING ATTORNEYS' FEES** .......................................................................................31

    **VI.**   **THE AMOUNT OF ATTORNEYS' FEES AWARDED BY THE DISTRICT COURT WAS REASONABLE AND JUSTIFIED**..........35

**CONCLUSION**......................................................................................................37

**RULE 28.2(C)(4) STATEMENT ON ORAL ARGUMENT** ...........................38

## TABLE OF AUTHORITIES

### Cases

*Am. Registry, LLC v. Hanaw*,
  No. 2:13-CV-352-FTM-29CM, 2015 WL 5687693 (M.D. Fla. Sept. 25, 2015) .16

*Armelin v. Donahoe*,
  608 F. App'x 695 (10th Cir. 2015)....................................................................23

*Brown v. Cinemark USA, Inc.*,
  No. 16-15377, 2017 WL 6044112 (9th Cir. Dec. 7, 2017) ...............................32

*Bryant v. MV Transp., Inc.*,
  231 F.R.D. 480 (E.D. Va. 2005)................................................................ 16, 17

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*,
  532 U.S. 598 ........................................ 13, 15, 16, 17, 18, 19, 20, 21

*BWP Media USA, Inc. v. Gossip Cop Media, LLC*,
  No. 13 Civ. 7574, 2015 WL 321877 (S.D.N.Y. January 26, 2015) .....................18

*Cadkin v. Loose*,
  569 F.3d 1142 (9th Cir. 2009) ............................................................................19

*Concha v. London*,
  62 F.3d 1493 (9th Cir.1995) ..............................................................................34

*DeShiro v. Branch*,
  183 F.R.D. 281 (M.D. Fla. 1998) .......................................................................19

*First Data Merch. Servs. Corp. v. SecurityMetrics, Inc.*,
  672 F. App'x 229 (4th Cir. 2016).......................................................................30

*Five Star Mfg. Inc. v. Ramp Lite Mfg. Inc.*,
  196 F. Supp. 2d 1170 (D. Kan. 2002).......................................................... 35, 36

*Guttenberg v. Emery*,
  68 F. Supp. 3d 184 (D.D.C. 2014).....................................................................20

*Harris v. Captiva Condominiums, LLC*,
  No. 6:08CV210ORL28KRS, 2008 WL 4911237 (M.D. Fla. Nov. 14, 2008) .....19

*Hopkins Mfg. Corp. v. Cequent Performance Prods., Inc.*,
  223 F. Supp. 3d 1194 (D. Kan. 2016)............................................................. 20

*In re Brewer*,
  863 F.3d 861 (D.C. Cir. 2017)............................................................................32

*Iqbal v. Golf Course Superintendents Ass'n of Am.*,
  900 F.2d 227 (10th Cir.1990) ...............................................................................37

*John's Insulation, Inc. v. L. Addison & Assoc.*,
  156 F.3d 101 (1st Cir.1998).................................................................................34

*Johnson v. Pringle Dev., Inc.*,
  No. 5:05-cv-37-o10-GRJ, 2006 WL 2189542 (M.D. Fla. Aug. 1, 2006) ............17

*Keith Mfg. Co. v. Butterfield*,
  256 F. Supp. 3d 1123 (D. Or. 2017) .....................................................................33

*Killer Joe Nevada v. Leaverton*,
  No. C 13-4036, 2014 WL 3547766 (N.D. Iowa July 17, 2014)............................23

*Lorillard Tobacco Co. v. Engida*,
  611 F.3d 1209 (10th Cir. 2010) ........................................... 14, 15, 19, 21, 24, 25

*Malibu Media, LLC v. Baiazid*,
  152 F. Supp. 3d 496 (E.D. Va. 2015) ........................................................... 19, 20

*Mares v. Credit Bureau of Raton*,
  801 F.2d 1197 (10th Cir. 1986) ............................................................................35

*Martin v. Franklin Capital Corp.*,
  251 F.3d 1284 (10th Cir. 2001) ............................................................................34

*Martinez v. United States*,
  94 Fed. Cl. 176 (2010) .......................................................................... 17, 18

*Microsoft v. Baker*,
  137 S. Ct. 1702, 198 L. Ed. 2d 132 (2017)............................. 2, 14, 31, 32, 33, 34

*Nat 'l Ass'n of Prof'l Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*,
  223 F.3d 1143 (10th Cir. 2000) .................................................. 14, 15, 25, 27, 29

*Neff v. Neff*,
  247 P.3d 380 (Utah 2011)......................................................................................30

*Rasmussen v. Thorne*,
  No. 13-CV-02557-CMA-CBS, 2015 WL 4652781 (D. Colo. Aug. 6, 2015)......24

*Reed v. Shenandoah Mem'l Hosp.*,
  No. 8:01-CV-435, 2002 WL 1964826 (D. Neb. Aug. 12, 2002)..........................16

*RFR Indus., Inc. v. Century Steps, Inc.*,
  477 F.3d 1348 (Fed. Cir. 2007) ..................................................................... 19, 21

*Samsung Elecs. Co. v. Rambus, Inc.*,
  440 F. Supp. 2d 495 (E.D. Va. 2006) ...................................................................21

*Schmier v. McDonald's LLC*,
    569 F.3d 1240 (10th Cir. 2009) ...............................................34
*Sinajini v. Bd. of Educ. of San Juan Cty. Sch. Dist.*,
    53 F. App'x 31 (10th Cir. 2002)........................................ 35, 37
*Smalbein ex rel. Estate of Smalbein v. City of Daytona Beach*,
    353 F.3d 901 (11th Cir. 2003) ...............................................19
*Sussman v. Patterson*,
    108 F.3d 1206 (10th Cir. 1997) ...................................... 31, 35
*Szabo Food Serv., Inc. v. Canteen Corp.*,
    823 F.2d 1073 (7th Cir. 1987) ...............................................21
*Tidwell v. Krishna Q Investments, LLC*,
    935 F. Supp. 2d 1354 (N.D. Ga. 2012)...................................19
*Turner v. Vilsack*,
    No. 3:13-CV-1900 SI, 2016 WL 1048893 (D. Or. Mar. 14, 2016)............... 18, 33
*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*,
    123 F. Supp. 2d 582 (D. Kan. 2000)........................................37
*United States v. Estate of Rogers*,
    No. 1:97-CV-461, 2003 WL 21212749 (E.D. Tenn. Apr. 3, 2003) .....................24
*University of KS v. Sinks*,
    No. 06-2341-JAR, 2008 WL 750350 (D. Kan. Mar. 19, 2008) ..........................24
*Watson v. County of Riverside.*,
    300 F.3d 1092 (9th Cir. 2002) ...............................................16
*Woodard v. STP Corp.*,
    170 F.3d 1043 (11th Cir.1999) ...............................................34

## **Statutes**

15 U.S.C. § 1117....................................................... passim
28 U.S.C. § 1291...................................................... 1, 32
28 U.S.C. § 1331..........................................................1
28 U.S.C. § 1367..........................................................1
U.C.A. § 13-11a-3.........................................................2
U.C.A. § 13-11a-4(2)(c)............................................. 2, 29

## **Rules**

Fed. R. Civ. P. 41(a)(1)(A) ...............................................18

Fed. R. Civ. P. 41(a)(1)(A)(ii) .............................................. 15, 16, 18, 19
Fed. R. Civ. P. 41(a)(1) .................................................................. passim
Fed. R. Civ. P. 54 ..................................................................... 14, 33, 35
Fed. R. Civ. P. 54(D) ................................................................................36
Fed. R. Civ. P. 41(a) .................................................................................21
Fed. R. Civ. P. 41 .....................................................................................15
Fed. R. Civ. P. 41(a)(1)(A)(i) ................................................................ 21, 34
Fed. R. Civ. P. 41(a)(2) ............................................................ 13, 15, 18, 21
Rules of the Court of Federal Claims 41(a)(1)(A) ......................................... 17, 18
DUCivR 54-2(f)……………………………………………………..……36

**CORPORATE DISCLOSURE STATEMENT**

A corporate disclosure statement is not applicable to this appeal.

**STATEMENT OF PRIOR OR RELATED APPEALS**

There are no prior or related appeals.

**STATEMENT OF JURISDICTION**

The U.S. District Court for the District of Utah (the "District Court") had jurisdiction over Xlear, Inc.'s ("Xlear") Lanham Act claim against Focus Nutrition, LLC ("Focus Nutrition"), pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Xlear's state law claims pursuant to 28 U.S.C. § 1367. (Aplt. App. at 9.) The District Court had jurisdiction over Focus Nutrition's Counterclaim pursuant to 28 U.S.C. § 1331 and/or 28 U.S.C. § 1367. (*Id*. at 32.) On July 18, 2017, the District Court entered a Memorandum Decision and Order ("Order") awarding Focus Nutrition its attorney fees incurred in this action (Aplt. App. at 147-53), following the entry of a stipulated dismissal with prejudice. (*Id*. at 6, 56-58.) This Court has jurisdiction over Xlear's appeal of the Order pursuant to 28 U.S.C. § 1291. Xlear filed a Notice of Appeal on August 10, 2017. (Aplt. App. at 154-56.)

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**

(1)    Whether the District Court properly ruled that that Focus Nutrition was the prevailing party pursuant to 15 U.S.C. § 1117. (Aplt. App. at 149-51.)

1

(2)    Whether the District Court properly ruled that the case was "exceptional" pursuant to 15 U.S.C. § 1117. (*Id*. at 152-53.)

(3)    Whether the District Court properly ruled that Focus Nutrition was the prevailing party pursuant to Utah Code Ann. § 13-11a-4(2)(c). (*Id*. at 151-52.)

(4)    Whether the Supreme Court's decision in *Microsoft Corp. v. Baker* held that a voluntary dismissal with prejudice is not a final appealable judgment for purposes of seeking attorneys' fees. (*Raised by Xlear for first time on appeal*.)

(5)    Whether the amount of attorneys' fees awarded by the District Court was reasonable and justified. (Aplt. App. at 153.)

## STATEMENT OF THE CASE

**I.    Statement of Relevant Underlying Facts and Procedural History.**

Xlear Sues Focus Nutrition for Infringement of Its Alleged Trade Dress.

Xlear filed its Complaint against Focus Nutrition on June 20, 2016. (Aplt. App. at 3.) Xlear alleged that Focus Nutrition intentionally copied the packaging of its xylitol product, constituting trade dress infringement under the Lanham Act. (*Id*. at 13-14.) Xlear also asserted state law claims for violation of the Utah Truth in Advertising Act ("UTIAA"), U.C.A. § 13-11a-3 and "Common Law Unfair Competition." (*Id*. at 14-16.) Xlear demanded injunctive relief against Focus Nutrition, an award of damages, treble damages based on Focus Nutrition's "willful" conduct, punitive damages, interest, costs and fees. (*Id*. at 16-17.)

2

### Focus Nutrition Promptly Files a Counterclaim for Declaratory Judgment of Non-Infringement and Unenforceability of Xlear's Alleged Trade Dress.

In response, Focus Nutrition filed a Counterclaim for Declaratory Judgment of Non-Infringement and Unenforceability of Xlear's unregistered alleged trade dress. (*Id.* at 32-47.) The Counterclaim included visual depictions of twenty-three (23) examples of third-party products in the parties' industry and/or for the same xylitol or sugar/sweetener products. (*Id.* at 37-43.) These products utilized standard or similar designs as the unregistered alleged trade dress. (*Compare, id.* at 10.) The Counterclaim did not seek damages or other relief apart from a declaration and attorney fees. (*Id.* at 46-47.) Xlear nonetheless persisted in maintaining its lawsuit and filed an Answer to the Counterclaim on September 2, 2016. (*Id.* at 49-55.)

### Xlear Does Nothing to Prosecute or Defend Its Lawsuit.

The Court thereafter entered a Scheduling Order on October 5, 2016, setting the fact discovery deadline as May 28, 2017. (Aplt. App. at 4.) Despite initiating this lawsuit, at no time during the litigation proceedings or discovery process did Xlear produce a single document, or conduct, respond to, or participate in any discovery whatsoever to support or defend its claims. (*Id.* at 78-79, 149.)

Specifically, in the almost eleven (11) months this case was pending:

- Xlear did not produce or disclose any document(s) to Focus Nutrition, pursuant to its Initial Disclosures or at any time thereafter;

- Xlear did not serve any written discovery requests (including interrogatories, requests for production, or requests for admission) to

3

Focus Nutrition or serve subpoenas on any third parties;

- Xlear did not take any depositions of Focus Nutrition or third parties;

- Xlear did not designate any experts or disclose any expert reports or discovery to support its state unfair competition/advertising claims or its federal trade dress infringement claim, including but not limited to any evidence supporting its alleged damages, a likelihood of customer confusion, secondary meaning, or inherent distinctiveness of its alleged trade dress;

- Xlear did not respond to, nor seek an extension for, Focus Nutrition's First Set of Written Discovery served on March 20, 2017;

- Xlear did not disclose any witnesses in these proceedings, with the exception of one individual: Xlear's CEO, Nathan Jones, in its Initial Disclosures.  Mr. Jones was insufficiently and vaguely alleged to have discoverable knowledge about "[t]he trade dress at issue in the lawsuit; Defendant's infringing activity"; and

- Xlear did not disclose any damages, or underlying support thereof.

(*Id*. at 78-79.)

<u>Focus Nutrition Incurs Attorneys' Fees in Defending Against Xlear's Lawsuit.</u>

Despite completely disengaging from its lawsuit, Xlear persisted in maintaining its claims during the entire pendency of discovery in this case. (Aplt. App. at 79; 4-6.) As the defendant in a pending federal trade dress infringement action, Focus Nutrition was consequently forced to incur attorneys' fees in order to ensure it would be in a position to defend the merits of the case if and when Xlear opted to prosecute its claims, and to be able to do so within the parameters of the Scheduling Order. (*Id.* at 79.) To that end, early in the discovery process Focus

4

Nutrition filed a Rule 12(c) Motion for Judgment on the Pleadings ("Rule 12(c) Motion") on the grounds that Xlear could not show that its alleged trade dress was "inherently distinctive" for purposes of stating an infringement claim, based on the third-party product examples in its Counterclaim. (*Id*. at 5, 80.) Focus Nutrition filed the Rule 12(c) Motion in an attempt to advance and narrow the scope of dispositive issues in this case, after it became apparent that Xlear did not intend to make any effort to refute its Counterclaim allegations. (*Id*. at 80.) Indeed, as counsel for Focus Nutrition explained at the hearing on the Rule 12(c) Motion:

> **Mr. Steward**:  I know my 12(c) motion is a little unusual, but my client was sued for trade dress infringement on the barest of allegations, the barest, just conclusory legal statements. In the eight months that they have prosecuted this case, not a single fact has been offered to support any of the elements of inherent distinctiveness or nonfunctionality, both of which are required.
>
> That is why we brought our motion. I think that it should be well taken. The pleadings say what they say and all of these are at issue in our counterclaim for declaratory relief on noninfringement.

(*Id*. at 103.) Focus Nutrition also prepared a Notice of Rule 30(b)(6) Deposition of Xlear in anticipation of receiving responses to written discovery requests it served on Xlear on March 20, 2017. (*Id*. at 80.) The discovery requests sought information concerning both parties' claims and defenses, including but not limited to damages, expert reports, third party witness statements, and documents in Xlear's possession, custody or control. (*Id*.)

5

Xlear Persists In Doing Nothing In Response to the Rule 12(c) Motion and Focus
Nutrition's Discovery Requests.

In response to the Rule 12(c) Motion, Xlear persisted in its failure to disclose

any evidence or prosecute its claims in discovery. (Aplt. App. at 80.) Instead, Xlear

requested two extensions of time to file an Opposition to the Rule 12(c) Motion. (*Id*.

at 5, 80.) During the briefing period for the Rule 12(c) Motion, Xlear missed the

deadline to designate experts to support its claims. (*Id*. at 4, 80.)

At the Hearing on the Rule 12(c) Motion, Xlear Admits It Had Conducted No
Discovery to Support Its Claims and the District Court Makes Findings Adverse to
the Merits of Xlear's Claims.

On April 10, 2017, the District Court held a hearing on the Rule 12(c) Motion.

(*Id*. at 6.) At the hearing, and with less than a month remaining before the fact

discovery deadline, Xlear admitted to the District Court that it did not have an expert

retained to establish a likelihood of confusion among customers, and that it had not

taken any polls concerning customer confusion. (*Id*. at 105-06.) In response to the

District Court's question as to whether the parties had exchanged discovery before

the written discovery deadline, Xlear's counsel told the District Court that Xlear

"received discovery requests from [Focus Nutrition]," that "[Xlear is] planning on

depositions," and that Xlear "[has] some information from our client that we'll

provide" concerning customer confusion.  (*Id*. at 105.) The District Court responded:

"You're just going to bring in some people who claim they were confused?" to which

Xlear's attorney answered, "Yes, Your Honor." (*Id*. at 106.) At the hearing, the

6

District Court "made findings on the record" (*id.* at 6) adverse to the merits of

Xlear's claims. For example:

- The District Court stated: "I am wondering how [Xlear] met Rule 11 with regard to this trade dress allegation?" (*Id.* at 106.)

- The District Court stated: "I'll have to agree with Mr. Steward on this one, bare-bones pleadings. Something has to back it up." (*Id.* at 106.)

- The District Court stated, as to the third-party products displayed at the hearing: " . . . [Y]ou can look at all of those packages and they look remarkably similar." (*Id.* at 106.)

- The District Court commented on Xlear's lack of experts and that Xlear's counsel "seem[ed] to be quite smug in standing there and say[ing] [that Xlear] pled what [it] needed to plead and I wonder if [Xlear] did." (*Id.* at 107.)

- The District Court found:

  [I]t just seems as weak a case as I can imagine from a company that is upset that some former employees went out and did exactly what it seems like a lot of other companies are doing with this same Xylitol product and artificial sweeteners. [The products] are all green and white. (*Id.* at 107.)

- The District Court commented on Xlear's knowing failure to conduct any discovery, despite notice of Focus Nutrition's Counterclaim allegations since it was filed:

  You have been given an opportunity with deadlines in the discovery process to do something. You know that [Focus Nutrition] has allegations in [its] counterclaim that are identical to [its] performance here today. Just cutting through the procedure, it wouldn't be hard for me today to say that no reasonable jury is going to find trade dress infringement based on the allegations in the counterclaim, and a lack of facts on [Xlear's] side, and that is why I asked what [Xlear is] planning to do in discovery. (*Id.* at 108-09.)

7

- As to the merits of the Rule 12(c) Motion, the District Court stated:

Then [Xlear pleads] quite conclusorily, as a result of Xlear's extensive use and promotion of the [sic] XyloSweet trade dress, the public associates the XyloSweet trade dress with Xlear and its natural sweetener product.  It is a little hard to believe that there are facts to support that allegation when we just look at this display here on the table.  I can see why Mr. Steward thinks he has a good case, I mean to get declaratory judgment in his favor for the proposition that their packaging does not constitute a trade dress violation. (*Id*. at 109-10.)

**The District Court Ultimately Denies the Rule 12(c) Motion Based on Xlear's Representations that It Would Disclose and Conduct Discovery Before the Fact Discovery Deadline of May 1, 2017.**

The Court ultimately denied the Rule 12(c) Motion, however, based on Xlear's representations that it would disclose and conduct discovery in the three weeks remaining in fact discovery. The District Court concluded: "[I] suppose there is the possibility that facts will get revealed during this discovery disclosure window that would allow [Xlear's attorney] to avoid summary judgment." (Aplt. App. at 115-16.) "It does seem like a cumbersome and high, costly, expensive way to get here . . . [but based on procedural rules] I'm just going to have to let it go to that next step." (*Id*. at 116.) Immediately after the hearing, Focus Nutrition's counsel told Xlear of its intent to file a dispositive motion for summary judgment upon the expiration of fact discovery, and Xlear's counsel asked Focus Nutrition to hold off on filing the motion until he could confer with Xlear. (*Id*. at 80-81.)

8

<u>Xlear Fails to Conduct, Produce or Respond to Discovery By the Fact Discovery Deadline and Finally Agrees to Voluntarily Withdraw Its Lawsuit to Avoid an Adverse Summary Judgment Ruling on the Merits.</u>

Fact discovery concluded on May 1, 2017. (Aplt. App. at 105, 149.) Despite its representations to the District Court at the hearing, Xlear never disclosed any evidence of customer confusion to Focus Nutrition, did not respond to Focus Nutrition's written discovery requests, and did not take (or attempt to schedule or notice) any depositions. (*Id*. at 81.)

After Focus Nutrition's counsel followed up with Xlear's counsel, Xlear finally agreed to dismiss its action in its entirety with prejudice, to avoid responding on the merits to an impending motion for summary judgment. (*Id*. at 80-81; *see also id*. at 146, Email from T. Smith to S. Zollinger and M. Steward, 05/09/17, attaching proposed stipulated dismissal and order, and stating, "I told [M. Steward] I'd like to get something filed today if possible ***so there would not be a need for you to file a summary judgment motion***.") (Emphasis added.) Xlear did not obtain a judgment on its claims, and the parties did not enter into any settlement granting any relief to Xlear. (Aplt. App. at 81.) Xlear's counsel prepared the stipulation of dismissal. (*Id*.) Focus Nutrition agreed to include the entire action in the dismissal, provided that the pleading reserve its rights to seek the recovery of fees and costs with the Court. (*Id*.)

Accordingly, on May 10, 2017, Xlear filed the Stipulation of Dismissal, which the Court acknowledged thereafter by terminating the case and sending a Final

9

Decision of an Action with the U.S. Patent and Trademark Office. (*Id*. at 81, 6.)

## II.     <u>Order Presented for Review</u>.

Following the Court's termination of the case, on May 24, 2017, Focus Nutrition timely filed a Motion for Attorneys' Fees ("Fees Motion"), as prayed for in its Counterclaim and reserved in the parties' dismissal. (*Id*. at 59-120, 6.) The parties "fully briefed" the Fees Motion and submitted it for decision on July 7, 2017. (*Id*. at 6, 147.) On July 18, 2017, and without the need for a hearing, the District Court entered its Memorandum Decision and Order granting the Fees Motion and awarding attorneys' fees in the amount of $26,674.00, as the prevailing party in an "exceptional" case under the Lanham Act, and as the prevailing party under the UTIAA. (*Id*. at 6, 147-53.)

The District Court's Order included, *inter alia*, the following findings:

First, that the reason the District Court denied the Rule 12(c) Motion was Xlear's (ultimately false) representations that it planned to take depositions and substantiate its claims with the time remaining in discovery:

> [At the Rule 12(c) Motion hearing], [t]he Court noted that without more evidence in the record, the Court would grant summary judgment on the trade dress infringement claim. ***The Court denied the Rule 12(c) motion, however, because the discovery deadline had not yet passed and Plaintiff stated it intended to take depositions that would factually substantiate its claims***. (*Id*. at 148.) (Emphasis added.)

Second, that despite Xlear's representations and persistence in maintaining its claims up to the Rule 12(c) Motion hearing and until the end of fact discovery, Xlear

10

had done nothing to prosecute or defend its lawsuit: "At no time during the litigation proceedings or discovery process did Plaintiff conduct, respond to, or participate in any discovery to support its claims." (*Id*. at 149.)

Third, that Focus Nutrition was the "prevailing party" for purposes of being awarded attorneys' fees under the Lanham Act:

> Plaintiff initiated this action with a Complaint that contained only cursory allegations. In the eleven months that the case was pending in this Court, Plaintiff conducted no discovery to prosecute or support its claims. It made no effort to comply with Rule 26 initial disclosure requirements; made no expert witness designations; took no depositions; served no discovery requests; failed to disclose any witnesses, with the exception of its CEO; conducted no polls or surveys to support its allegations; and offered no evidence of damages. After the discovery deadline had passed, and when notified that Defendant was about to file a motion for summary judgment, Plaintiff filed the stipulated dismissal of its case with prejudice. Although Plaintiff had sought injunctive relief and an award of damages, including treble and punitive damages, interest, costs and fees, it received no monetary settlement or damages, nor injunctive relief of any kind. The Court finds that, given the facts and circumstances of this action, Defendant is the "prevailing party" for purposes of awarding attorneys fees under § 1117(a) of the Lanham Act. (*Id*. at 149-50, internal case law citations omitted).)

Fourth, that this was an "exceptional" case under the Lanham Act for purposes of awarding Focus Nutrition its attorneys' fees as the prevailing party:

> The Court finds that the undisputable facts in the record demonstrate that there was a lack of objective merit to the claims in Plaintiff's Complaint. Additionally, Plaintiff made no effort to engage in any discovery or to prosecute its claims for eleven months. Plaintiff did not respond to Defendant's written discovery requests. During the pendency of the suit, Defendant was forced to incur attorneys' fees for the filing of pleadings, motions and discovery to prepare its defense. The Court finds that under these facts, this case is exceptional.

(*Id*. at 153.) Fifth, that Focus Nutrition was the "prevailing party" for purposes of being awarded attorneys' fees under the UTIAA, because under the "flexible and reasoned approach" under Utah law, "within the context of the case as a whole," the District Court found " . . . Defendant prevailed within the context of this case as a whole. As discussed [with respect to the Lanham Act analysis], it succeeded in Plaintiff dismissing all of its claims with prejudice." (*Id*. at 151-52.)

## SUMMARY OF ARGUMENT

Xlear challenges the discretion exercised by District Court Judge Dee Benson declaring Focus Nutrition the prevailing party in this action, based on two statutes authorizing the award of attorneys' fees, and after Xlear voluntarily dismissed its lawsuit, with prejudice, to avoid an adverse ruling on summary judgment. Xlear's dismissal was prompted by the District Court's findings, on the record, that its claims objectively lacked merit and Xlear's subjective conduct in failing to disclose, conduct or respond to any discovery to prosecute or defend its lawsuit. Xlear did not challenge these factual findings before the District Court, and it does not challenge these findings on appeal—instead, its brief is conspicuously silent on the factual and procedural history of this case aside from a perfunctory recitation of docket entries.

Xlear's appeal instead relies on unsupported legal and factual assertions, as follows: First, Xlear attempts to elevate form over substance to claim, as a matter of law, that there can be no prevailing party if a stipulated dismissal is filed under Fed.

12

R. Civ. P. 41(a)(1), as opposed to Rule 41(a)(2). This is not the law. The governing standard set by the Supreme Court in *Buckhannon* looks to the reason for the dismissal and judicial action in the record, which in this case unequivocally compel the conclusion that Focus Nutrition prevailed. The District Court was not stripped of its statutory authority to make this determination based on the form of the dismissal.

Second, the District Court properly found that this was an "exceptional" case warranting fees under the Lanham Act pursuant to factors set by the Tenth Circuit, and the discretion "largely vested" to the District Court in this regard. The Order articulated that Xlear's claims objectively lacked merit, ***and*** that Xlear's subjective conduct in failing to prosecute or defend its own lawsuit satisfied the "exceptional" standard. Xlear does not challenge these findings. It ignores them entirely and instead proffers an unsupported narrative that is contrary to the record in this case.

Third, there is no dispute that Xlear did not obtain any of the relief it demanded when it filed its lawsuit. There is also no dispute that the reason it dismissed its claims with prejudice, thereby mooting Focus Nutrition's defensive Counterclaim, was the District Court's scathing findings that its claims lacked merit and its own persistent failure to do anything to litigate its case. The District Court therefore properly found Focus Nutrition to have prevailed with respect to the "entire litigation," which is the governing standard to award fees under the UTIAA.

Fourth, Xlear raises for the first time on appeal a novel argument that the Supreme Court in *Microsoft* stripped the District Court of its authority to award fees in any case where there is a voluntary dismissal with prejudice, because such disposition does not carry the label or effect of a "judgment" under Fed. R. Civ. P. 54. Not only is the argument waived, but the narrow holding in *Microsoft* made no such rule, explicitly or by implication. Xlear instead relies on a non-controlling district case that is not persuasive and is contrary to well-established federal law recognizing voluntary dismissals with prejudice as final, appealable judgments.

Finally, Xlear's challenge to the amount of fees awarded by the District Court is not supported by Rule 54, its local rule equivalent in the District of Utah, or the case law relied on by Xlear. The District Court awarded Focus Nutrition $26,674.00 in fees for approximately one year of work, supported by sufficient data as required by law. The District Court's discretion is given "great weight" in this regard.

None of Xlear's arguments justify overturning the discretion and proper actions of the District Court in awarding attorneys' fees in this case. As demonstrated herein, Focus Nutrition respectfully requests that this Court affirm the Order.

## **ARGUMENT**

### I.    STANDARD OF REVIEW.

This Court "review[s] a district court's decision on whether to award attorney fees [under the Lanham Act] for abuse of discretion, but [it] review[s] de novo the

district court's application of the legal principles underlying that decision." *Lorillard Tobacco Co. v. Engida*, 611 F.3d 1209, 1213 (10th Cir. 2010) (quoting *Nat 'I Ass'n of Prof'l Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143, 1146 (10th Cir. 2000) (internal citations omitted)).

**II.   THE DISTRICT COURT PROPERLY FOUND THAT FOCUS NUTRITION WAS THE PREVAILING PARTY PURSUANT TO 15 U.S.C. § 1117.**

> **A.   *Buckhannon* and Its Progeny Do Not Preclude the District Court From Exercising Its Statutory Authority to Award Fees Where a Case is Voluntarily Dismissed Under Fed. R. Civ. P. 41(a)(1).**

The crux of Xlear's appeal is that the District Court was stripped of its authority to award fees upon the filing of a stipulated dismissal under Fed. R. Civ. P. 41(a)(1)(A)(ii), as opposed to the filing of the (identical) stipulation under Rule 41(a)(2). Xlear claims, as a matter of law: "It is well established that when a case is dismissed pursuant to Rule 41(a)(1), even with prejudice, as was this case, there is no prevailing party." (Aplt. Br. at 8, citing *Buckhannon [Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*,] 532 U.S. [598] at 605-06 [(2001)].)

Xlear is incorrect. *Buckhannon* did ***not*** hold that a stipulated dismissal with prejudice under Rule 41(a)(1)(A)(ii) cannot confer prevailing party status; in fact, it did not address stipulated dismissals under Rule 41 at all. *Buckhannon* held that a "prevailing party" under the federal statute at issue required more than just the non-prevailing party's "voluntary change in conduct," because it "lacks the necessary

15

judicial *imprimatur* on the change." *Id*. at 605. To be a prevailing party, one must obtain a "material alteration of the legal relationship of the parties" that is judicially sanctioned, such as a judgment on the merits or a court-ordered consent decree. *Id.* at 604–05. While "[j]udgments and consent decrees are examples" of judicial action sufficient to confer prevailing party status, "they are not the only examples." *Watson v. County of Riverside.,* 300 F.3d 1092, 1096 (9th Cir. 2002).[1]

Thus, "[a] voluntary dismissal *with* prejudice will render a defendant a prevailing party . . . however there must be some 'judicial *imprimatur'* that ***prompts the corresponding change in the legal relationship of the parties***[.]"*Am. Registry, LLC v. Hanaw*, No. 2:13-CV-352-FTM-29CM, 2015 WL 5687693, at \*4 (M.D. Fla. Sept. 25, 2015) (unpublished) (quoting *Buckhannon*, at 605) (italics emphasis in original) (bold italics emphasis added).

Xlear's own authority confirms that the substance prompting a dismissal prevails over form. Xlear cites *Bryant v. MV Transp., Inc.*, 231 F.R.D. 480 (E.D. Va. 2005) for the proposition that a dismissal under Rule 41(a)(1)(A)(ii) is insufficient

---

[1] *See also Reed v. Shenandoah Mem'l Hosp.*, No. 8:01-CV-435, 2002 WL 1964826, at \*3 (D. Neb. Aug. 12, 2002) (unpublished) (finding prevailing party under ERISA statute despite absence of judgment or consent decree under *Buckhannon*, where court approved settlement between parties) (citing *Buckhannon*, 532 U.S. at 618, (J. Scalia, concurring) (noting "even if there has been no judicial determination on the merits, the outcome is at least the product of, and bears the sanction of, judicial action *in the lawsuit*") (emphasis in original)).

to confer prevailing party status. (Aplt. Br. at 10, fn. 4, 16.) *Bryant*, however, recognized that a "stipulated dismissal" does, in fact, "create[] a change in the legal relationship between the parties" as required by *Buckhannon*, but in that case, " . . . the court has no way of knowing ***why*** the Former Plaintiffs voluntarily dismissed the action, since there was no court involvement in the matter." *Id.* at 482, n.5. (Emphasis added). The purported concern is that "[t]he parties could have agreed to dismiss for any number of reasons or benefits, other than because one party would have won on the merits if the case went to trial. Thus, neither litigant is the prevailing party." (Aplt. Br. at 17, quoting *Bryant*, at 481.)[2] However, this concern is not present where the record demonstrates the reason behind the dismissal. *See Bryant*, at n. 7 (distinguishing where the record before another court "made it easy to determine" that party prevailed). *See also Martinez v. United States*, 94 Fed. Cl. 176, 181–83 (2010) (based on reasons "amply demonstrate[d]" in the record, including the "defendant's statements and actions," the court's remand to an agency was sufficient to confer prevailing party status under *Buckhannon*, even though party dismissed claims without court order under Rules of the Court of Federal Claims

---

[2] (*See also* Aplt. Br. at 15, citing *Johnson v. Pringle Dev., Inc.*, 2006 WL 2189542, at *2, n. 7 (M.D. Fla. Aug. 1, 2006) (unpublished), as "a suit similar to the present case," but which case actually relied on *Bryant* for the same proposition, that the joint stipulation of dismissal was insufficient to confer prevailing party status because there was no "determination of any kind" as to why it was dismissed).

17

41(a)(1)(A)[3]). Indeed, as the *Martinez* court confirmed: "Defendant's argument that dismissal pursuant to Rule 1(a)(1)(A) *categorically* precludes a party from being considered prevailing is unpersuasive." *Id.* at 183. (Emphasis in original).

Because a Rule 41(a)(1) dismissal does not preclude a court from finding a prevailing party, Xlear's attempt to discredit the Order because it did not distinguish between Rule 41(a)(1) and Rule 41(a)(2) is self-defeating. (*See* Aplt. Br. at 10, "Neither Focus nor the district court cited as single case where a court found a party to be the prevailing party when the case was dismissed pursuant to Rule 41(a)(1)(A)(ii).") In any event, Xlear's proposition is false. Such cases do exist.[4]

For the same reason, it is immaterial that the District Court cited cases in its Order that did not distinguish between dismissals under Rule 41(a)(1) and Rule 41(a)(2). (Aplt. Br. at 10-11.) The case law parentheticals cited by District Court

---

[3] Rule 41(a)(1)(A) is substantively identical to its Fed. R. Civ. P. 41(a)(1)(A) counterpart insofar as both subsections are without a court order.

[4] *See, e.g., BWP Media USA, Inc. v. Gossip Cop Media, LLC*, No. 13 Civ. 7574, 2015 WL 321877, at *4 (S.D.N.Y. January 26, 2015) (unpublished) (defendant was "prevailing party" under the Copyright Act where the "parties agreed to a stipulation of dismissal with prejudice pursuant to ***Rule 41(a)(1)(A)(ii)***") (internal quotation and citation omitted) (emphasis added); *Martinez*, 94 Fed. Cl. at 181–82 (conferring prevailing party status under *Buckhannon* where party voluntarily dismissed claims under ***Rule 41(a)(1)***); *Turner v. Vilsack*, No. 3:13-CV-1900 SI, 2016 WL 1048893, at *2 (D. Or. Mar. 14, 2016) (unpublished) (awarding fees to prevailing party under EAJA statute after parties filed stipulated dismissal under ***Rule 41(a)(1)(A)(ii)***; court found sufficient "imprimatur of change" in preliminary injunction proceedings earlier in the case).

stand for the correct and unremarkable proposition that a voluntary dismissal may

support a prevailing party determination. (Aplt. App. at 150-51.) These holdings are

consistent with *Buckhannon*.[5] Finally, the cases cited by Xlear as purportedly

holding that "there can be no prevailing party" upon a Rule 41(a)(1) dismissal post-

*Buckhannon* do not stand for that proposition. (Aplt. Br. at 8-9.) At most, these cases

recite the "judicial imprimatur" standard in *Buckhannon*, or find that a Rule 41(a)(1)

dismissal, in and of itself, does not ***ordinarily*** give rise to a prevailing party because

it is presumed to be without prejudice, or it was not apparent from the record if the

dismissal was prompted by judicial action.[6] Xlear primarily relies on *Malibu Media,*

---

[5] Xlear attempts to undermine these holdings based on factors that are irrelevant to the point for which these cases were cited. For example, Xlear claims that *Cadkin v. Loose*, 569 F.3d 1142 (9th Cir. 2009) was wrongly cited because it "found [the] defendant was *not* the prevailing party for purposes [of the Act]; no discussion or mention of Rule 41(a)(1)(A)(ii)." (Aplt. Br. at 10.) In fact, the Order cited *Cadkin* for the correct proposition that a "voluntary dismissal with prejudice of a plaintiff's infringement claim confers 'prevailing party' status [under Copyright Act]" (Aplt. App. at 150)—*Cadkin* otherwise found that the party *in that case* did not qualify because the dismissal was *without* prejudice: " . . . a defendant is a prevailing party following dismissal of a claim if the plaintiff is judicially precluded from refiling the claim against the defendant in federal court. That is not the circumstance here, so the [defendants] are not prevailing parties[.]" *Id*. at 1150.

[6] (*See* Aplt. Br. at 8, citing *Lorillard Tobacco Co.*, 611 F.3d at 1215); (Aplt. Br. at 9, fn. 3, citing *Smalbein ex rel. Estate of Smalbein v. City of Daytona Beach*, 353 F.3d 901 (11th Cir. 2003); *RFR Indus., Inc. v. Century Steps, Inc.*, 477 F.3d 1348, 1353 (Fed. Cir. 2007); *Tidwell v. Krishna Q Investments, LLC*, 935 F. Supp. 2d 1354, 1360 (N.D. Ga. 2012); *Harris v. Captiva Condominiums, LLC*, No. 6:08CV210ORL28KRS, 2008 WL 4911237, at *2 (M.D. Fla. Nov. 14, 2008) (unpublished); *DeShiro v. Branch*, 183 F.R.D. 281, 286 (M.D. Fla. 1998).)

19

*LLC v. Baiazid*, 152 F. Supp. 3d 496 (E.D. Va. 2015), and *Hopkins Mfg. Corp. v. Cequent Performance Prods., Inc.*, 223 F. Supp. 3d 1194 (D. Kan. 2016), but these cases only underscore these limited holdings.[7] Ultimately, none of the cases cited by Xlear involved the same record before the District Court, and the District Court properly relied on the record in determining that Focus Nutrition prevailed.

**B.    The District Court's Determination of Focus Nutrition as the Prevailing Party, Supported by the Record, Satisfies *Buckhannon*.**

The District Court properly determined that Focus Nutrition was the prevailing party. The parties' stipulated dismissal was ***with*** prejudice (Aplt. App. at 56) and was judicially sanctioned because Xlear is not free to bring its claims again. *Cf. Guttenberg v. Emery*, 68 F. Supp. 3d 184, 191 (D.D.C. 2014) (under *Buckhannon*, declining to find prevailing party where voluntary dismissal was ***without prejudice***; party's " . . . voluntary dismissal of his case without prejudice works ***no judicially sanctioned change*** in the parties' relationship (i.e. [the party] is free to bring his claim again, and [the opposing party] is still subject to a later

---

[7] *Hopkins* actually declared the defendant the prevailing party and awarded it attorneys' fees after finding, ***based on the record***, that it had obtained some relief on the merits under *Buckhannon*. *See id.* at 1203. Conversely, the record in *Malibu Media* did not lend any support to the defendant claiming fees; rather, ". . . other record evidence suggests that defendant's story about [a third party committing the copyright infringement, which admittedly occurred] is false[.]" *Id.* at 498-99. Thus, it is not surprising that the court focused solely on the form of the dismissal in declining to award fees.

lawsuit[]")) (emphasis added).[8] The parties' stipulated dismissal also included an express reservation of rights to seek attorneys' fees post-dismissal, and the District Court recognized the entry of the stipulated dismissal on the docket (Aplt. App. at 6), which operated as an adjudication on the merits. *See Samsung Elecs. Co.*, 440 F. Supp. 2d at 508 ("A voluntary dismissal with prejudice operates as an adjudication on the merits of the case.") (citing Fed. R. Civ.P. 41(a)).

It is also undisputed that the District Court's judicial action prompted Xlear to dismiss its claims with prejudice, thereby mooting Focus Nutrition's

---

[8] Indeed, the ostensible problem with a Rule 41(a)(1) dismissal is that it is presumed to be without prejudice. *See id*. at subsection (B) ("Unless the . . . stipulation states otherwise, the dismissal is without prejudice"). *See also Lorillard Tobacco Co.*, 611 F.3d at 1215 (finding Rule 41(a)(1)(A)(i) dismissal insufficient to confer prevailing party status under *Buckhannon* because it was without prejudice); *RFR Indus., Inc.,* 477 F.3d at 1353 (recognizing *Buckhannon* and holding, "A plaintiff's voluntary dismissal without prejudice pursuant to Rule 41(a)(1)[(A)](i), however, does not constitute a change in the legal relationship of the parties ***because the plaintiff is free to refile its action***.") (Emphasis added) (citing *Szabo Food Serv., Inc. v. Canteen Corp.,* 823 F.2d 1073, 1076–77 (7th Cir.1987) ("Because the Rule 41(a)(1)(i) dismissal is without prejudice . . . it is not the practical equivalent of a victory for defendant on the merits.").

Conversely, under Rule 41(a)(2) the "district courts can impose terms and conditions on the plaintiff in order to obviate any prejudice to the defendant . . . ***Of course, the ultimate condition that the court can impose on the voluntary dismissal is that the dismissal be with prejudice***." *Samsung Elecs. Co. v. Rambus, Inc.*, 440 F. Supp. 2d 495, 509 (E.D. Va. 2006) (emphasis added). Here, the dismissal incorporated the "ultimate" condition the District Court could have imposed if the dismissal was filed under Rule 41(a)(2), so there is no functional distinction between the two subsections in this case.

21

Counterclaim and effectuating a material change in the legal relationship between the parties. The District Court made a series of findings, "on the record" (Aplt. App. at 6) at the Rule 12(c) Motion hearing adverse to the merits of Xlear's claims. (Aplt. App. 106-10, quoted above at "Statement of Relevant Underlying Facts and Procedural History".) The District Court was prepared to grant judgment at the hearing, but for the representations of Xlear's counsel that Xlear planned to disclose discovery to substantiate its claims, and take depositions. (Aplt. App. at 115-16; *see also* Order at Aplt. App. at 148, confirming the reason the District Court did not grant judgment at the hearing was " . . . because the discovery deadline had not yet passed and Plaintiff stated it intended to take depositions that would factually substantiate its claims.") Of course, Xlear did not respond to, disclose or conduct any discovery after the Rule 12(c) Motion hearing. (Aplt. App. at 81.) The Order thus confirmed that Xlear's dismissal was prompted by its unfulfilled representations to the District Court, and to avoid the impending motion for summary judgment. (*Id.* at 150, "After the discovery deadline had passed, and when notified that Defendant was about to file a motion for summary judgment, Plaintiff filed the stipulated dismissal of its case with prejudice."; *see also* Aplt. App. at 146, email from Xlear's counsel upon the expiration of fact discovery to stipulate to dismissal so Focus Nutrition would not file its motion for summary judgment.)

Conversely, Focus Nutrition dismissed its Counterclaim because it was a defensive claim rendered moot by Xlear's dismissal, as confirmed by the Order:

> Defendant's Counterclaim was included in the stipulated dismissal as it was rendered moot by Plaintiff's dismissal with prejudice. *See, e.g., Killer Joe Nevada v. Leaverton*, [No. C 13-4036], 2014 WL 3547766, at *5 (N.D. Iowa July 17, 2014) (unpublished) (finding that defendant's noninfringement counterclaim was dependent on and rendered moot by plaintiff's voluntary dismissal of claim against defendant with prejudice).

(Aplt. App. at 150.)[9] In sum, it is undisputed that the reason this lawsuit was dismissed with prejudice was because the District Court's findings prompted Xlear to dismiss its lawsuit to avoid an adverse ruling on summary judgment. Xlear's

---

[9] Xlear argues, for the first time on appeal, the novel proposition that it ***prevailed*** on the Counterclaim because by mooting it before it lost on the merits, Xlear was able to "preserve[] the validity of its trade dress." (Aplt. Br. at 17.) To be clear, it was Xlear's legal burden to prove it held a valid, yet unregistered trade dress, which the District Court rejected in the strongest possible terms. (*See, e.g.,* Aplt. App. at 106-07, 109, District Court asking how Xlear met "Rule 11" with trade dress allegations, declaring Xlear's claims "as weak a case as I can imagine," finding that the third-party packaging examples look "remarkably similar" to the alleged trade dress, and that "it wouldn't be hard for me today to say that no reasonable jury is going to find trade dress infringement based on the allegations in the counterclaim, and a lack of facts on [Xlear's] side[.]") Yet, Xlear is asking this Court to presume not only that its alleged, unregistered trade dress was valid, but that it prevailed because it dismissed the lawsuit before it lost on summary judgment. Xlear cites no support for this nonsensical position, it is facially inconsistent with the record in this case, and Xlear's argument that it prevailed in any respect has been waived on appeal. *See Armelin v. Donahoe*, 608 F. App'x 695, 696 (10th Cir. 2015) (unpublished) ("This court generally does not consider arguments not raised in the district court. . . . When a party forfeits an argument by failing to raise it, we may review for plain error . . . But [appellant] has not argued for plain-error review, and that failure acts as a waiver in this court") (internal citations omitted).

contention that Focus Nutrition was required to continue to incur fees and waste judicial resources to secure summary judgment (*see* Aplt. Br. at 16) is contrary to law. Parties are not required to litigate meritless claims to judgment in order to obtain prevailing party status under fee-shifting statutes. *See, e.g., University of KS v. Sinks*, No. 06-2341-JAR, 2008 WL 750350, at *2 (D. Kan. Mar. 19, 2008) (unpublished) (recognizing federal precedent that prevailing party determination may be supported by showing that party withdrew or dismissed claims to avoid a disfavorable judgment on the merits, as resolved from the record).[10] The District Court properly determined the prevailing party based on the undisputed record in this case. Xlear's attempt to strip the District Court of its statutory authority to do so is without merit.

## III. THE DISTRICT COURT PROPERLY FOUND THAT THIS WAS AN "EXCEPTIONAL" CASE PURSUANT TO 15 U.S.C. § 1117.

Xlear argues that the District Court "abused its discretion in finding that this is an exceptional case under 15 U.S.C. § 1117." (Aplt. Br. at 20.) "Under the abuse

---

[10] *See also United States v. Estate of Rogers*, No. 1:97-CV-461, 2003 WL 21212749, at *4–5 (E.D. Tenn. Apr. 3, 2003) (unpublished), aff'd sub nom. *United States v. Alpha Med., Inc.*, 102 F. App'x 8 (6th Cir. 2004) (declining to award costs to prevailing party where record showed " . . . this is not a case where a calculating plaintiff has voluntarily dismissed a groundless or frivolous complaint in a strategic move to preclude entry of an adverse judgment on the merits and thereby seek to avoid the imposition of costs and attorney's fees"); *Rasmussen v. Thorne*, No. 13-CV-02557-CMA-CBS, 2015 WL 4652781, at *4 (D. Colo. Aug. 6, 2015) (unpublished) (defendant was prevailing party in voluntary dismissal with prejudice where "[the] facts adequately demonstrate that Plaintiff withdrew his complaint in order to avoid an unfavorable ruling on the merits").

24

of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Lorillard Tobacco Co.*, 611 F.3d at 1213.

Xlear cannot meet this high bar. As a threshold issue, Xlear purports to rely on the same legal standard as the District Court, but it ignores the discretion afforded to a court thereunder. (Aplt. Br. at 20-21, citing factors set forth in *Nat'l Ass'n of Prof'l Baseball Leagues*, 223 F.3d 1143 (10th Cir. 2000); *compare* Order, at Aplt. App. at 152-53, citing factors under but quoting Tenth Circuit that "[n]o one factor is determinative".) Indeed, "[t]he Lanham Act largely vests in the district court the discretion to determine when a losing plaintiff's claims or conduct in the litigation are so 'exceptional' as to warrant the assessment of attorney fees." *Nat'l Ass'n*, at 1147. The Tenth Circuit explained:

> We are disinclined to add additional judicial gloss onto the statutory language. Rather, we think the district courts are quite able to decide which are "exceptional cases," as opposed to routine cases, looking both at the objective merit or the lack thereof of the plaintiff's case and the likely subjective motivations of the plaintiff as reflected by the trial strategies utilized.

*Id*. Thus, the District Court was not constrained to all or any of the listed factors, if it determined, in its discretion, that this case was "exceptional" to warrant fees.

Xlear also ignores the findings made in the Order. It asserts that the District Court "did not conclude that the Complaint lacked any foundation." (Aplt. Br. at

25

21.) (*But see* Order at Aplt. App. at 153, "The Court finds that the undisputable facts in the record demonstrate that ***there was a lack of objective merit to the claims in Plaintiff's Complaint***.") Xlear asserts that the District Court "did not find that Xlear engaged in bad faith in bringing the suit. It did not find that the case was prosecuted in an unusually vexatious or oppressive manner." (Aplt. Br. at 21.) (*But see* Order at Aplt. App. at 153, "***Additionally, Plaintiff made no effort to engage in any discovery or to prosecute its claims for eleven months. Plaintiff did not respond to Defendant's written discovery requests***.[11] During the pendency of the suit, Defendant was forced to incur attorneys' fees for the filing of pleadings, motions and discovery to prepare its defense. The Court finds that under these facts, this case

---

[11] The Order provided additional support in this regard. (Aplt. App. at 149-50):

> Plaintiff initiated this action with a Complaint that contained only cursory allegations. In the eleven months that the case was pending in this Court, Plaintiff conducted no discovery to prosecute or support its claims. It made no effort to comply with Rule 26 initial disclosure requirements; made no expert witness designations; took no depositions; served no discovery requests; failed to disclose any witnesses, with the exception of its CEO; conducted no polls or surveys to support its allegations; and offered no evidence of damages. After the discovery deadline had passed, and when notified that Defendant was about to file a motion for summary judgment, Plaintiff filed the stipulated dismissal of its case with prejudice. Although Plaintiff had sought injunctive relief and an award of damages, including treble and punitive damages, interest, costs and fees, it received no monetary settlement or damages, nor injunctive relief of any kind.

is exceptional.") (Emphasis added.) The District Court acted well within its discretion to find this case was "exceptional" under the parameters in *Nat'l Ass'n.*

That Xlear "disagrees with the district court's characterization of its claims" (Aplt. Br. at 21) is not relevant to whether the District Court abused its discretion, and its arguments are unavailing: First, Xlear claims that the Order's finding that its claims "lacked objective merit, " . . . contradicts the district court's own statement during the [Rule 12(c) Motion hearing] that Xlear had 'pled enough' in its complaint to withstand [the Rule 12(c) Motion], notably a motion that Focus [Nutrition] lost." (Aplt. Br. at 21.) In fact, the District Court actually called Xlear's allegations "bare bones pleadings" (Aplt. App. at 106), wondered "how [Xlear] met Rule 11 with regard to this trade dress allegation?" (*Id.*), called Xlear's counsel "quite smug in standing there and saying [that Xlear] pled what [it] needed to plead and I wonder if you did[]" (*Id.* at 107), called the case "as weak a case as I can imagine . . ." (*Id.*), and noted that Xlear had pled the Complaint "quite conclusorily []." (*Id.* at 109-10.) Xlear draws a false equivalency between barely meeting a pleading standard in its Complaint almost a year earlier (Aplt. App. at 3, 6), and it not bothering to substantiate its allegations on the eve of the fact discovery deadline. At that juncture, the District Court's conclusion was well-founded.

Second, Xlear's assertion that Focus Nutrition "notably" lost the Rule 12(c) Motion is especially disingenuous because the Order confirmed that the only reason

27

it did not enter judgment at the hearing was Xlear's representations that it would substantiate its claims before the discovery deadline. (Aplt. App. at 149; *see also id.* at 105, 109-10, 115-16.) Xlear's representations proved false as it failed to disclose or conduct discovery after the hearing. (*Id.* at 81.) Thus, to say that Xlear "survived" (Aplt. Br. at 22) the Rule 12(c) Motion is a blatant distortion of the record.

Third, Xlear's suggestion that its complete failure to do anything to prosecute or defend this case somehow saved Focus Nutrition from "incur[ring] additional costs or [] multiply[ing] the proceedings" (Aplt. Br. at 22) is absurd given the posture of this case. Focus Nutrition should have not had to incur ***any*** costs to defend a lawsuit that Xlear never intended to prosecute, yet persisted in maintaining for months. It is also patently false that Xlear "chose to pursue a resolution of this dispute as opposed to ramping up discovery and causing the parties to incur additional costs[.]" (*Id.* at 23.) Xlear had no option at that point; the District Court decimated the merits of its case at the Rule 12(c) Motion hearing, Xlear had not disclosed discovery to support its "bare bones" allegations, and discovery had ended so Xlear could no longer delay an adverse summary judgment.

Finally, Xlear claims that its "primary concern" in this lawsuit, since the filing of the Rule 12(c) Motion, was to "preserve the validity of its [unregistered and unprotectable] trade dress." (Aplt. Br. at 23.) In that case, Xlear does not explain why it did not then immediately dismiss its lawsuit when the Rule 12(c) Motion was

28

filed in January 2017, or do so immediately after the Counterclaim was filed in August 2016 (upon which the Rule 12(c) Motion was based). Instead, it requested two extensions to file an opposition brief, went through with the Rule 12(c) Motion hearing where it rested "quite smug[ly]" (Aplt. App. at 107) on the pleading standard, told the District Court it would disclose and conduct discovery to avoid an adverse judgment at the hearing, and then afterward continued to do nothing until the expiration of fact discovery, at which time Xlear's counsel sent urgent emails to stipulate to dismissal, ". . . so there would not be a need for [Focus Nutrition] to file a summary judgment motion." (Aplt. App. at 146.) Such a position only reinforces the District Court's conclusion that Xlear's conduct supported an "exceptional" finding. Indeed, the District Court's ruling that this was an "exceptional" case was sound and within its discretion under the undisputed record in this case, and the latitude afforded to it under *Nat'l Ass'n*. Xlear's mischaracterization of these proceedings to mask its conduct (or lack thereof) is contrary to the record.

## IV.    THE DISTRICT COURT PROPERLY FOUND THAT FOCUS NUTRITION WAS THE PREVAILING PARTY PURSUANT TO UTAH CODE ANN. § 13-11a-4(2)(c).

The Order found that Focus Nutrition prevailed on Xlear's Utah Truth in Advertising Act ("UTIAA") claim for the same reasons it was the prevailing party under the Lanham Act: Xlear voluntarily dismissed *all* of its claims to avoid summary judgment because they lacked merit. (Aplt. App. at 152, " . . . Defendant

29

prevailed within the context of this case as a whole. As discussed above, it succeeded in Plaintiff dismissing all of its claims with prejudice.") Conversely, "[a]lthough Plaintiff had sought injunctive relief and an award of damages, including treble and punitive damages, interest, costs and fees, it received no monetary settlement or damages, nor injunctive relief of any kind." (*Id*. at 150.)

Xlear's response is to attempt to minimize its UTIAA claim. (*See* Aplt. Br. at 25, claiming that its UTIAA claim "was not an important claim relative to the entire litigation".) However, by Xlear's own authority, Utah law looks to the "entire litigation" (Aplt. Br. at 24-25, citing *Neff v. Neff*, 247 P.3d 380 (Utah 2011)) and whether there was a prevailing party "within the context of the case as a whole" (*id*., citing *First Data Merch. Servs. Corp. v. SecurityMetrics, Inc*., 672 F. App'x 229 (4th Cir. 2016) (unpublished)) in awarding attorneys' fees. The Order also cited these cases and properly applied them in recognizing that Focus Nutrition prevailed as to the entirety of the lawsuit because all of Xlear's claims were dismissed and Xlear obtained none of the relief it sought. (Aplt. App. at 151-52, noting that it is "to employ 'a flexible and reasoned approach' . . . [and] should not ignore common sense when deciding which party prevailed") (internal citations omitted.)

Xlear therefore returns to its new argument on appeal, that it ***did*** prevail to some extent because it "was able to preserve the validity of its trade dress by obtaining a dismissal with prejudice of Focus' counterclaim." (Aplt. Br. at 24.) This

argument is without merit, as addressed above. (*See* footnote 9, above.) Indeed, it defies "common sense" to deem Xlear to have "prevailed" because it dismissed the case before it could lose on the merits. Xlear did not succeed on any aspect of this litigation, and it cites to no provision in the UTIAA or Utah law requiring the District Court to parse between claims when Focus Nutrition prevailed on all of them.

**V.    THE SUPREME COURT'S RULING IN *MICROSOFT* DOES NOT APPLY HERE AND DID NOT HOLD THAT A VOLUNTARY DISMISSAL WITH PREJUDICE IS NOT A FINAL JUDGMENT FOR PURPOSES OF SEEKING ATTORNEYS' FEES.**

Xlear argues, for the first time on appeal[12], that the District Court was stripped of its statutory authority to award attorneys' fees because a stipulated dismissal with prejudice cannot operate as a final "judgment" to award attorneys' fees, pursuant to *Microsoft v. Baker*, 137 S. Ct. 1702, 198 L. Ed. 2d 132 (2017).

*Microsoft* made no such holding. In *Microsoft*, the district court struck class action allegations, and the plaintiffs' petition for interlocutory review of that order was denied. *Id*. at 1704. Rather than proceeding individually, the plaintiffs voluntarily dismissed the case *for the express purpose* of creating a final judgment

---

[12] Xlear concedes that it may not raise a new issue on appeal, but that this Court should exercise its discretion to "depart" from this rule because *Microsoft* presents a "strictly legal question, the proper resolution of which is beyond doubt or when manifest injustice would otherwise result." (Aplt. Br. at 18, citing *Sussman v. Patterson*, 108 F.3d 1206, 1210 (10th Cir. 1997).) As explained herein, *Microsoft* is inapposite to any issue in this appeal, and the Court should decline to exercise its discretion to consider this untimely and irrelevant argument.

so they could appeal the interlocutory order. *Id*. The Supreme Court held "the voluntary dismissal essayed by respondents does not qualify as a 'final decision' within the compass of § 1291." *Id*. at 1707. It reasoned that this "tactic would undermine § 1291's firm finality principle, designed to guard against piecemeal appeals, and subvert the balanced solution Rule 23(f) put in place for immediate review of class-action orders." *Id*. In other words, *Microsoft* was concerned with violating the "final-judgment rule" under 28 U.S.C. § 1291. *Id*. at 1712. The plaintiffs' dismissal "tactic" subverted this rule to invoke appellate jurisdiction.

*Microsoft* therefore addressed a narrow abuse of § 1291. It does not stand for the wholesale proposition that dismissals are not final, appealable orders. *See Brown v. Cinemark USA, Inc*., No. 16-15377, 2017 WL 6044112, at *2 (9th Cir. Dec. 7, 2017) (unpublished) (exercising appellate jurisdiction over dismissal of class allegations; distinguishing *Microsoft* as plaintiffs did not "engage in sham tactics" akin to plaintiffs in *Microsoft*); *In re Brewer*, 863 F.3d 861, 871 (D.C. Cir. 2017) (exercising jurisdiction notwithstanding stipulated dismissal of plaintiff's claims in class action; distinguishing *Microsoft* as the "procedural posture and the facts of this case are far different" where the plaintiff in *Microsoft* "opportunistically dismissed his individual claims in order to get review of an issue—class certification—for which he had been denied interlocutory review").

*Microsoft* and its progeny are inapplicable here, as this case does not involve a voluntary dismissal to obtain appellate jurisdiction and subvert the final-judgment rule. Thus, *Microsoft* does not present a controlling, legal question that this Court should address on appeal. Xlear's argument actually relies on a District of Oregon case, currently on appeal to the Ninth Circuit, purporting to interpret *Microsoft* for the overbroad proposition that ". . . a voluntary dismissal with prejudice, even in the absence of a settlement agreement, is not an appealable order." *Keith Mfg. Co. v. Butterfield*, 256 F. Supp. 3d 1123, 1130 (D. Or. 2017). The *Keith* court then concluded that a stipulated dismissal, even with prejudice, is not a final "judgment" for purposes of moving for attorneys' fees under Fed. R. Civ. P. 54. *See id.*

*Keith* is not controlling, and it is not persuasive. Indeed, the opinion itself appears uncertain of its application of *Microsoft*. *See id.* at 1130 (" . . . [I]n light of the fact that the Supreme Court's decision in [*Microsoft*] is quite recent and has not yet been applied in the context of motions for attorney's fees under Rule 54, prudence suggests that the Court also evaluate Keith's argument that neither [party prevailed]. The Court turns to that issue next."). The court's hesitation is well-taken, because its holding flies in the face of well-established precedent, including in its own district[13]

---

[13] *Turner v. Vilsack*, No. 3:13-CV-1900 SI, 2016 WL 1048893, at \*2 (D. Or. Mar. 14, 2016) (unpublished) (rejecting argument that "because the case was dismissed pursuant to stipulation under Rule 41(a)(1), the Court has no jurisdiction over this action and Plaintiff may not seek [fees under EAJA statute as prevailing party]").

and this Circuit. It is axiomatic that voluntary dismissals with prejudice are final, appealable judgments. *See Schmier v. McDonald's LLC*, 569 F.3d 1240, 1242 (10th Cir. 2009) ("A voluntary dismissal with prejudice operates as a final adjudication on the merits . . . and is thus a 'final judgment'[.]") (Internal quotations and citations omitted). *Schmier* notably involved a dismissal by notice under Rule 41(a)(1)(A)(i). *See id*. (citing 8 James Wm. Moore et al., Moore's Federal Practice § 41.33[6][c] at 41–84) ("A dismissal by notice made with prejudice operates as an adjudication on the merits.").[14] To remove any doubt that this rule remains consistent with the Supreme Court's recent ruling, the *Martin* court clarified it does not run afoul of the "final judgment rule" that was the concern in *Microsoft*:

> Viewing such a judgment as final does not undermine the final judgment rule by encouraging quasi-interlocutory appeals . . . Judicial economy is furthered because when the appellant voluntarily dismisses his action with prejudice and loses on appeal, the district court is saved the time and effort of conducting extended trial proceedings and there is in addition no possibility of piecemeal appeals.

---

[14] *See also Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1288–89 (10th Cir. 2001), *abrogated on other grounds by Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014) (same) (citing *Woodard v. STP Corp.*, 170 F.3d 1043, 1044 (11th Cir.1999) (voluntary dismissal with prejudice final); *John's Insulation, Inc. v. L. Addison & Assoc.*, 156 F.3d 101, 107 (1st Cir.1998) ("most circuits hold that voluntary dismissals, and especially those with prejudice, are appealable final orders"); *Concha v. London*, 62 F.3d 1493, 1507 (9th Cir.1995) (judgment final when it bars claims forever).

*Martin*, 251 F.3d at 1288-89. In sum, this Court should not consider Xlear's argument under *Microsoft* because it was not raised below, and *Microsoft* does not call into doubt that there was a final judgment for purposes of fees under Rule 54.

## VI.   THE AMOUNT OF ATTORNEYS' FEES AWARDED BY THE DISTRICT COURT WAS REASONABLE AND JUSTIFIED.

Xlear argues that the District Court abused its discretion in the amount of fees awarded. (Aplt. Br. at 27.) "We review the reasonableness of an award of attorneys' fees for abuse of discretion, giving 'great weight' to the district court's assessment." *Sussman v. Patterson*, 108 F.3d 1206, 1209 (10th Cir. 1997); *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1200–01 (10th Cir. 1986) ("An appellate court plays a limited role in reviewing a trial court's award of attorneys' fees. We customarily defer to the District Court's judgment ... [because it] saw the attorneys' work first hand[.]") This Circuit finds an abuse of discretion "only if we have a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Sinajini v. Bd. of Educ. of San Juan Cty. Sch. Dist.*, 53 F. App'x 31, 34 (10th Cir. 2002) (unpublished). (All internal quotations and citations omitted).

Xlear has not claimed the amount of fees is unreasonable—its only objection is its conclusory assertion that the District Court did not rely on sufficient data. Xlear cites *Five Star Mfg. Inc. v. Ramp Lite Mfg. Inc.,* 196 F. Supp. 2d 1170 (D. Kan. 2002), in which the attorney declarations contained "only the dates of billing by the

law firms, the invoice numbers, the fees, the expenses, and the total; ***there is a complete lack of any information relating to the work done, who did it, the tasks performed, or the time spent in performance of the tasks***." *Id*. at 1174. (Emphasis added). On the other hand, the court declined to assume "the burden of going through the mass of counsel's billing records to parse out allowable hours[.]" *Id*.

Here, Xlear incorrectly claims that "[t]he only information Focus provided to support its claimed amount of attorney fees is a spreadsheet showing amounts billed on this case by its counsel." (Aplt. Br. at 27.) To the contrary, Focus Nutrition submitted an affidavit of its counsel, to which the billing record was attached. (Aplt. App. at 81-85.) Mr. Steward's Affidavit breaks down each attorney's hourly rates, their legal experience, the tasks for which fees in the amount of $26,674.00 were incurred over approximately one year of litigation, the number of hours expended by each attorney, and the billing record by month. (*Id*.) This submission satisfied District of Utah local rule DUCivR 54-2(f), which sets forth, in pertinent part, the data required to justify an award of attorneys' fees[15]: "The motion [for attorneys' fees] must (i) state the basis for the award; (ii) specify the amount claimed; and, ***(iii) be accompanied by an affidavit of counsel setting forth the scope of the effort, the***

---

[15] Fed. R. Civ. P. 54(D) [Special Procedures by Local Rule; Reference to a Master or a Magistrate Judge] provides: "By local rule, the court may establish special procedures to resolve fee-related issues without extensive evidentiary hearings."

***number of hours expended, the hourly rates claimed, and any other pertinent***

***supporting information that justifies the award***." (Emphasis added).

"It is within the district court's broad discretion, given its first-hand experience of the litigation as a whole, to make a holistic determination, rather than a meticulous accounting, in deciding the appropriate fee." *Sinajini*, 53 F. App'x at 39. The award of $26,674.00 in attorneys' fees over approximately one year was reasonable, justified and well within the District Court's discretion.

Finally, Focus Nutrition requests and reserves the right to move for an award of its appellate fees and costs incurred in the event this Court affirms the Order. *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 123 F. Supp. 2d 582, 586 (D. Kan. 2000) (noting that trademark infringement plaintiffs, who had prevailed in "exceptional case," were entitled to recover attorney fees reasonably incurred in defending trial court's attorney fee award on appeal); *Iqbal v. Golf Course Superintendents Ass'n of Am.*, 900 F.2d 227, 229-30 (10th Cir.1990) (fees on appeal appropriate in that case, where counsel was forced to defend statutory award).

## CONCLUSION

Based on the foregoing, the District Court acted properly and within its discretion in awarding Focus Nutrition its attorneys' fees incurred in defending itself against Xlear's meritless lawsuit. Focus Nutrition respectfully requests that this Court affirm Judge Benson's Order.

## RULE 28.2(C)(4) STATEMENT ON ORAL ARGUMENT

Focus Nutrition believes that the District Court's decision to award attorneys' fees was supported by well-established authority and within its discretion. The issues presented by Xlear's appeal are not novel, and oral argument is therefore not necessary to supplement the parties' briefs.

DATED this 28th day of December, 2017

**CLYDE SNOW & SESSIONS**

/s/ Matthew A. Steward

Matthew A. Steward
Shannon K. Zollinger
**CLYDE SNOW & SESSIONS, P.C.**
201 S. Main Street, 13th Floor
Salt Lake City, UT 84111
Telephone: (801) 322-2516

*Attorneys for Focus Nutrition, LLC*

38

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,318 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman type style, size 14-point font.

Undersigned counsel for Focus Nutrition certifies that the information in this certificate is true and correct to the best of her knowledge formed after a reasonable inquiry.

Date: December 28, 2017

CLYDE SNOW & SESSIONS

/s/ Shannon  K. Zollinger
Shannon K. Zollinger
201 S. Main St. 13th Floor
Salt Lake City, UT 84111
skz@clydesnow.com
Telephone: (801) 322-2516

*Attorneys for Focus Nutrition*

39

## CERTIFICATION OF ECF SUBMISSION

Pursuant to Section II(J) of the ECF User Manual, I hereby certify that (a) all required privacy redactions have been made; (b) the hard copies of any pleading required to be submitted to the clerk's office are exact copies of the ECF filing; and (c) the ECF submission was scanned for viruses with the most recent version of Symantec Endpoint Protection.

 Date: December 28, 2017

**CLYDE SNOW & SESSIONS**

/s/ Shannon K. Zollinger
Shannon K. Zollinger
201 S. Main St. 13th Floor
Salt Lake City, UT 84111
skz@clydesnow.com
Telephone: (801) 322-2516

*Attorneys for Focus Nutrition*

40

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2017, I caused a true and correct copy of the foregoing **BRIEF OF APPELLEE FOCUS NUTRITION, LLC** to be served via the Court's ECF service, which caused it be served upon those parties registered to receive electronic service in this case.

Date: December 28, 2017

**CLYDE SNOW & SESSIONS**

<u>/s/ Shannon  K. Zollinger</u>
Shannon K. Zollinger
201 S. Main St. 13th Floor
Salt Lake City, UT 84111
skz@clydesnow.com
Telephone: (801) 322-2516

*Attorneys for Focus Nutrition*

41